**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LUTRON ELECTRONICS CO., INC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. _____ |
| v. | : | |
| | : | |
| ENERLITES, INC., TOUCH GREEN ENERGY INC. d/b/a TOPGREENER ELECTRIC SUPPLY, LIDONG NI, and XIAODAN ZHENG, | : | JURY TRIAL DEMANDED |
| | : | |
| Defendants. | : | |

**COMPLAINT**

Lutron Electronics Co., Inc. ("Lutron"), for its complaint against Enerlites, Inc. ("Enerlites"), Touch Green Energy Inc. d/b/a TopGreener Electric Supply ("TopGreener"), Lidong Ni and Xiaodan Zheng (collectively, "Defendants") for trade dress infringement, false designation of origin, false advertising, unfair competition and copyright infringement, pleads and alleges as follows:

**PRELIMINARY STATEMENT**

1.      This is a case of unlawful competition and copyright infringement by deliberate and systematic copying and of false advertising. It is a lawsuit to recover damages, and to obtain injunctive and other equitable relief, as a result of (i) Defendants' willful misappropriation of Lutron's valuable intellectual property – in particular, Defendants' infringement of Lutron's trade dress rights in two of its lighting dimmers, the Diva® and the Ariadni®, and Defendants' infringement of Lutron's registered copyrights in the installation instruction sheets for the dimmers – and (ii) Defendants' false

1

advertising, including falsely advertising that their competing products comply with Underwriters Laboratory labeling, performance and safety standards when, in fact, they do not.

2. Lutron and defendant Enerlites compete in the sale of electrical and electronic devices, including lighting dimmers. Lutron is the industry pioneer, manufacturing and/or supplying more than 10,000 products to address the lighting control requirements of virtually any residential or commercial project. Lutron's success is the result of its long history of innovation, beginning with its founder's commercial introduction of a ground breaking solid-state dimmer switch. This history of innovation is the result of Lutron's substantial investment of approximately 10% of its revenue in research and development.

3. Defendants have a different vision. Rather than committing their resources – *i.e.*, spending millions of their own dollars – on independent research and development, Defendants have chosen to copy Lutron's products and misappropriate Lutron's valuable intellectual property.

4. Stealing others' intellectual property is not something new to Defendants and their affiliates. In fact, Lutron previously initiated legal proceedings against Enerlites' and TopGreener's affiliates for selling lighting control products that infringed Lutron's U.S. Patent No. 5,637,930 (the "Patent"). Those proceedings concluded by entry of Consent Orders with the United States International Trade Commission, whereby the affiliates agreed that they would cease the importation of products that infringe the Patent.

5. Although the Patent has recently expired, Lutron continues to hold intellectual property rights in the Diva® and Ariadni® dimmers. Defendants have chosen to resume their infringing conduct by copying the distinctive look and feel of Lutron's Diva® and Ariadni® dimmers, and by copying Lutron's copyrighted installation instruction sheets for the dimmers.

6. Defendants are recidivist infringers and must be stopped. Defendants should not be allowed to reap the financial benefits in the marketplace that have and will continue to flow from their continued theft of Lutron's valuable intellectual property. Nor should Defendants be permitted to continue to falsely represent and advertise their knock-offs of Lutron's Diva® and Ariadni® dimmers as complying with the standards of Underwriters Laboratories. Unless Defendants' acts of infringement, false designation of origin, false advertising, unfair competition and copyright infringement are enjoined, Lutron will suffer irreparable injury for which there is no adequate remedy at law.

## PARTIES

7. Lutron is a Pennsylvania corporation with its principal place of business located at 7200 Suter Road, Coopersburg, Pennsylvania 18036-1299. Lutron is in the business of, and invests extensively in, designing, developing, manufacturing, and marketing new and innovative lighting control products. Lutron sells its lighting control devices throughout the world.

8. On information and belief, defendant Enerlites is a California corporation with its principal place of business located at 1781 McGaw Avenue, Irvine, California 92614. Enerlites is a manufacturer and importer of electrical and electronic devices, including dimmer switches and related lighting control devices. Enerlites sells its products for residential, commercial, institutional, industrial electrical and data-com applications. It offers or has offered its products for sale – including its knock-offs of Lutron's Ariadni® and/or Lutron's Diva® dimmers – on its website enerlites.com and/or through its affiliate TopGreener on the www.topgreener.com website. Its products are also offered for sale online via Amazon.com, ebay.com, Smarthome.com and Electrical Marketplace.com, as well as by wholesalers such as Walters Wholesale Electric Co., Consolidated Electrical Distributors, Inc. and Leverage Liquidators.

9. On information and belief, defendant TopGreener is a California corporation (incorporated under the name Touch Green Energy, Inc.) with its principal place of business located at 1701 East Edinger Avenue, Suite A3, Santa Ana, California 92705. TopGreener is an affiliate of Enerlites under common control with Enerlites, is a retailer of electrical and electronic devices, including dimmer switches and related lighting control devices. It offers various Enerlites products for sale – including at least one of the two infringing products alleged herein – on its website at www.topgreener.com.

10. On information and belief, defendant Lidong Ni is a citizen of California, with his principal residence at 27 Donovan, Irvine, California 92620, and is President and Chief Executive Officer of Enerlites and the President of TopGreener. On further information and belief, Ni has actively participated in, authorized and approved, and induced or directed Enerlites and TopGreener employees to sell, the knock-off trade dresses at issue in this action and has been involved in the design of the Enerlites products at issue in this action.

11. On information and belief, defendant Xiaodan Zheng is a citizen of California, with his principal residence at 27 Donovan, Irvine, California 92620, is a principal and agent of Enerlites, and actively participated in and approved the knock-off trade dresses at issue in this action.

## JURISDICTION AND VENUE

12. The Court has subject matter jurisdiction over the trade dress infringement, false designation of origin, false advertising and unfair competition claims pursuant to the Lanham Act, 15 U.S.C. § 1121, and pursuant to 28 U.S.C. §§ 1331 and 1338(a) & (b) and over the copyright claim pursuant to the Copyright Act, 28 U.S.C. §§ 1331 and 1338(a). The Court has subject matter jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1332, because, on information and belief, there is complete diversity of citizenship between Lutron and Defendants and

because the amount in controversy exceeds $75,000, exclusive of interest and costs. The Court also has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367.

13. The Court has personal jurisdiction over Defendants because they have engaged in the actionable conduct alleged herein (including acts of infringement), in this Judicial District and directed at the Commonwealth of Pennsylvania.

14. By way of example, Enerlites and TopGreener, with Defendants Ni and Zheng's active participation and approval, have committed and continue to commit acts of trade dress infringement by selling and offering for sale products that copy Lutron's trade dresses in and into this Judicial District and in the Commonwealth of Pennsylvania, and by placing such products into the stream of commerce with the knowledge and intent that they would be sold in this Judicial District and in Pennsylvania.

15. Defendants' products that infringe Lutron's Ariadni® Trade Dress (as defined below) and Diva® Trade Dress (as defined below) were purchased in this Judicial District.

   a. On or about November 19, 2015, two Model DMD-3 dimmers manufactured by Enerlites were purchased using TopGreener's website at www.topgreener.com from a computer in this Judicial District for shipment to this Judicial District, and were received in this Judicial District on or about November 24, 2015.

   b. On or about November 20, 2015, three Model 53100 dimmers manufactured by Enerlites were purchased from the website ElectricalMarketplace.com from a computer in this Judicial District for shipment to this Judicial District, and were received in this Judicial District on or about November 28, 2015.

   c. On or about December 29, 2015, several Model DMD-3 dimmers manufactured by Enerlites were purchased from Amazon.com's website from a computer in this

    Judicial District for shipment to this Judicial District, and were received in this Judicial District on or about December 31, 2015 and January 2, 2016.

   d. Also on or about December 29, 2015, several other Model DMD-3 dimmers manufactured by Enerlites were purchased from Amazon's website from a computer in this Judicial District for shipment to this Judicial District; the products, which, according to Amazon's invoice, were "Sold by: Top Greener Electric Supply," were shipped to this Judicial District and were received in this Judicial District on or about December 31, 2015.

 16. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Lutron's claims occurred in this Judicial District.

## FACTUAL ALLEGATIONS

**Lutron and Its Ariadni® and Diva® Trade Dresses**

 17. Established in 1961, Lutron introduced one of the world's first mass market solid-state electronic lighting control devices used to dim electric lamps (a generic name for lights of many varieties). This device, often referred to as a "dimmer switch," replaced bulky rheostats and autotransformers that were inefficient and unattractive. Lutron remains a leading innovator and manufacturer of dimmer switches and other lighting control devices worldwide.

 18. Lutron's history of innovation, quality and success has been widely recognized. For example, on April 29, 2010, notable products, objects and papers from Lutron's 50-year history were added to the Electricity Collection of the Smithsonian's National Museum of American History, joining other notable artifacts such as Thomas Edison's experimental light bulbs. Lutron's products are also utilized in some of the most renowned locations in the world, including the White House, the Guggenheim Museum, the Metropolitan Museum of Art, and Windsor Castle.

19.     Lutron manufactures and supplies more than 10,000 products to address the lighting control requirements of virtually any residential or commercial project.  These products adjust the intensity of virtually every kind of lamp, and Lutron provides an integrated solution for controlling both natural daylight (with its motorized shades and blinds) and electric lighting (with its lighting control devices).

20.     Lutron annually spends approximately 10% of its revenue on, and employs hundreds of engineers dedicated to research and development directed to, solving previously insurmountable obstacles and designing cutting-edge lighting control devices.  Lutron spends still more on developing markets for its new technology and products, some of which are discussed below.

**The Ariadni® Dimmer**

21.     Introduced in 1991, Lutron's Ariadni® dimmer switch embodies a three dimensional design for a lighting (or fan) control comprising the following features and combination of features: a toggle switch positioned directly adjacent to a vertically oriented track containing a rectangular sliding actuator, with the sliding actuator approximately half the width of the toggle switch and the track for the sliding actuator approximately one third the width of the toggle switch; a bezel surrounding the sliding actuator and toggle switch; a separator of the same width as the bezel positioned vertically between the toggle switch and the sliding actuator's track; with the toggle switch opening and the sliding actuator opening of equal height and contiguous to one another, and forming an overall grouping of asymmetrical openings and actuators nested together, all as more specifically pictured below (hereinafter, the "Ariadni®  Trade Dress").

22.     Figure 1 below is an Ariadni® dimmer switch without the faceplate attached.  Figure 2 below is an Ariadni® dimmer switch with the faceplate attached, illustrating how the product appears after installation.

|  |  |
|---|---|
| **Figure 1: Lutron's Ariadni®  Dimmer (without faceplate)** | **Figure 2: Lutron's Ariadni®  Dimmer (with faceplate)** |

23.  The Ariadni® Trade Dress constitutes a combination of arbitrary design elements, the overall appearance and the elements of which are nonfunctional and inherently distinctive.

24.  Lutron owns valid, subsisting, existing and incontestable United States Trademark registrations for the Ariadni® Trade Dress for "electric light dimmers and electric fan controls," Registration Nos. 3,585,368; 3,597,211; and 3,601,010.  (Copies of the certificates of trademark registration are attached as Exhibit A.)  These registrations covering the Ariadni® Trade Dress depict the following marks:

8



**Figure 3: Lutron's Ariadni® Trade Dress Registration**

25. Lutron has extensively used and advertised the Ariadni® Trade Dress to identify the Ariadni® dimmer, including in advertising and marketing materials and labels, throughout the United States since 1991. Lutron has spent hundreds of thousands of dollars on advertising for the Ariadni® dimmer featuring the Ariadni® Trade Dress, and has sold tens of millions Ariadni® dimmers.

26. Through Lutron's substantial use, sales and promotion of the Ariadni® Trade Dress, the Ariadni® Trade Dress has become extremely well-known and famous for use in connection with Lutron's Ariadni® dimmer, has become distinctive of the product, and has come to identify and indicate the source of the product to consumers and the trade. The Ariadni® Trade Dress has developed substantial goodwill, has become closely associated with the Ariadni® dimmer sold by Lutron, and has come to symbolize the source of that product.

**The Diva® Dimmer**

27. Introduced in 1992, Lutron's Diva® dimmer switch embodies a three dimensional design for a lighting (or fan) control comprising the following features and combination of

9

features: a sleek uncluttered low profile, a symmetrical bezel surrounding a substantially rectangular first actuator where the bezel includes a vertically oriented track containing a substantially oblong second actuator, and the substantially rectangular first actuator presents a triangular shaped profile for the portion of the first actuator protruding above the bezel, with a non-symmetrical flange extending from the left and right side of the bezel, all as more specifically pictured below (hereinafter, the "Diva® Trade Dress").

28. Figure 4 below is a Diva® dimmer switch without the faceplate attached. Figure 5 below is a Diva® dimmer switch with the faceplate attached, illustrating how the product appears after installation.



| Figure 4: Lutron's Diva® Dimmer (without faceplate) | Figure 5: Lutron's Diva® Dimmer (with faceplate) |

29. The Diva® Trade Dress constitutes a combination of arbitrary design elements, the overall appearance and the elements of which are nonfunctional and inherently distinctive.

30. Lutron has extensively used and advertised the Diva® Trade Dress to identify the Diva® dimmer, including in advertising and marketing materials and labels, throughout the United States since 1992. Lutron has spent millions of dollars on advertising for the Diva® dimmer featuring the Diva® Trade Dress, and has sold tens of millions Diva® dimmers.

31. Through Lutron's substantial use, sales and promotion of the Diva® Trade Dress, the Diva® Trade Dress has become extremely well-known and famous for use in connection with Lutron's Diva® dimmer, has become distinctive of the product, and has come to identify and indicate the source of the product to consumers and the trade. The Diva® Trade Dress has developed substantial goodwill, has become closely associated with the Diva® dimmer sold by Lutron, and has come to symbolize the source of that product.[1]

**Defendants' Unauthorized Copying and Use of Lutron's Ariadni® and Diva® Trade Dresses**

32. Defendants and their affiliates have been engaged in a long-standing pattern and practice of copying competitors' intellectual property, particularly including Lutron's. Thus, Enerlites' affiliates American Top Electric Corp., Big Deal Electric Corp. (of which Defendant Ni is president and agent), and Universal Smart Electric Corp (of which Defendant Zheng is president and agent) entered into Consent Orders with the United States International Trade Commission that, *inter alia*, ordered them to cease the importation of lighting control devices, including dimmer switches and parts thereof, that infringe certain claims of Lutron's U.S. Patent No. 5,637,930, including Enerlites-branded products. Defendants have employed a web of companies and shifting addresses in an effort to disguise their common ownership and/or operation, as reflected in the chart below:

---

[1] Lutron's application for registration of the Diva® Trade Dress is the subject of three opposition proceedings in the Trademark Trial and Appeal Board. *See Pass & Seymour, Inc. v. Lutron Electronics Co., Inc.*, Opposition Nos. 91208865, 91212524 and 91212529.

| Company | Location | Management |
|---|---|---|
| American MTLC Appliances Group, Inc. | 1701 Edinger Avenue Santa Ana, CA<br><br>27 Donovan Irvine, CA | Zheng, Xiaodan, President |
| American Top Electric Corp. | 2442 Hunter Street, Los Angeles, CA | |
| Big Deal Electric Corp. | 1202 E. Walnut Street Santa Ana, CA | Lidong, Ni, President |
| Elemental LED, LLC | 1195 Park Avenue Emeryville, CA | |
| Eking Wiring Devices Co. Ltd. | 2215 Lee Avenue South El Monte, CA | Zheng, Xiaodan, President |
| Enerlites, Inc. | 1781 McGaw Avenue Irvine, CA<br><br>27 Donovan Irvine, CA<br><br>1712 Langley Avenue Irvine, CA<br><br>17795 Sky Park Circle Irvine, CA | Lidong Ni, CEO, President, Agent |
| Greener Forever Properties, LLC | 27 Donovan Irvine, CA | Lidong Ni, Member |
| Touch Green Energy, Inc. d/b/a TopGreener Electric Supply | 1701 Edinger Avenue Santa Ana, CA<br><br>1208 E. Walnut Street Santa Ana, CA | Lidong Ni, President |
| Universal Smart Electric Corp. | 17795 Sky Park Circle, Irvine, CA<br><br>27 Donovan Irvine, CA | Zheng, Xiaodan, President |

|  | 2215 Lee Avenue<br>South El Monte, CA<br><br>9550 Flair Drive<br>El Monte, CA |  |
| --- | --- | --- |
| Use Lighting Control, Inc. | 1701 Edinger Avenue<br>Santa Ana, CA<br><br>27 Donovan<br>Irvine, CA<br><br>17795 Sky Park Circle<br>Irvine, CA<br><br>9550 Flair Drive<br>El Monte, CA | Lidong Ni, President, Director |

33. Defendants' affiliates having been caught copying Lutron's technology by infringing Lutron's patent rights, Defendants have now turned to copying Lutron's product configuration trade dresses. Well after Lutron first began using the Ariadni® Trade Dress and the Diva® Trade Dress in the United States, Defendants commenced manufacturing, distributing and marketing dimmer knock-off copies of the Ariadni® and Diva® dimmers with trade dresses confusingly similar to the Ariadni® Trade Dress and the Diva® Trade Dress.

34. The side-by-side pictures below of Defendants' Model 53100 and Model DMD-3 dimmers and Lutron's Ariadni® and Diva® dimmers clearly show that the trade dresses of Defendants' dimmers are not only confusingly similar (with and without faceplates) to that of the Lutron's dimmers, but are virtually identical to them:

...



| | |
|---|---|
| **Figure 6: Defendants' Model 53100 Dimmer** | **Figure 7: Lutron's Ariadni® Dimmer** |
| **Figure 8: Defendants' Model DMD-3 Dimmer** | **Figure 9: Lutron's Diva® Dimmer** |



| Figure 10: Defendants' Model 53100 Dimmer (with faceplate) | Figure 11: Lutron's Ariadni® Dimmer (with faceplate) |
| Figure 12: Defendants' Model DMD-3 Dimmer (with faceplate) | Figure 13: Lutron's Diva® Dimmer (with faceplate) |

35.     That Defendants' products are blatant copies of Lutron's dimmers is obvious from the above pictures. Indeed, in one instance, a product identified on Amazon's website as "Enerlites Decorator Dimmer 120v 60hz 700w Max Single Pole/three Way Switch (White)" – that is, Defendants' DMD-3 dimmer – is, in fact, a photograph of Lutron's Diva® dimmer, as shown in the screen shot below:



**Figure 14: Lutron's Diva® Dimmer Advertised
on Amazon.com as Defendant's Model DMD-3 Dimmer**

36.     Also obvious is Defendants' knowledge and intent to copy: Enerlites, in communications with its customers, refers to its Model DMD-3 dimmer as "New Product (Diva Dimmer)" and as "our version of the Diva slide dimmer."

16

37. On information and belief, Defendants market, distribute and sell their dimmers with their infringing trade dresses in commerce in the United States, including in the Commonwealth of Pennsylvania. On information and belief, Defendants distribute and sell their infringing products in retail stores and through other channels of trade, including in retail outlets that sell to customers in the Commonwealth of Pennsylvania and within this Judicial District.

**Likelihood of Confusion Resulting from Defendants'**
**Unauthorized Use of Lutron's Ariadni® and Diva® Trade Dresses**

38. Defendants have not now and never have been authorized by Lutron or its affiliates to use the Ariadni® Trade Dress or the Diva® Trade Dress, or any variations thereof, in connection with their products.

39. On information and belief, Defendants' infringing products are or will be sold in the same stores, are offered for sale on Amazon.com alongside Ariadni® and Diva® dimmers, and are sold on the same and similar web sites and channels of trade as the Ariadni® and Diva® dimmers, for the same use as Lutron's dimmers. Defendants' infringing products and Lutron's Ariadni® and Diva® products are in the same general category of lighting controls, and are available for sale to many of the same retailers and consumers.

40. Defendants' use of trade dresses confusingly similar to the Ariadni® Trade Dress and the Diva® Trade Dress is likely to cause confusion, mistake or deception of purchasers and the consuming public as to the source or origin of Defendants' goods. A substantial number of actual and potential purchasers and consumers, upon encountering Defendants' products or advertisements bearing Defendants' trade dresses, are likely to mistakenly believe that Defendants' goods originate with, or are licensed, approved, or sponsored by, or otherwise affiliated with or related to, Lutron or the Ariadni® or Diva® products.

**Defendants' False Advertising of Compliance with Underwriters Laboratories' Standards**